# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| E.B.N. ENTERPRISES, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 09-cv-6279 |
| v. | ) ) ) | |
| | ) | Judge Sharon Johnson Coleman |
| C.L. CREATIVE IMAGES, INC., an Illinois corporation, and CORDA ANN LESTER, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants C.L. Creative Images and its sole owner, defendant Corda Lester, operated a hair salon under the "Fantastic Sams" name and trademark through a franchise agreement with plaintiff E.B.N. Enterprises. C.L. and Lester repudiated the agreement shortly before its term expired and Lester continued to operate a hair salon under a new name at the same location. E.B.N. contends that this operation is a violation of the non-competition provisions of the franchise agreement and seeks a preliminary injunction to stop the operation of the salon in its current location and to stop the defendants from using Fantastic Sams trade secrets. To the extent that E.B.N. seeks return of the operations manual it provided to the defendants, its motion for preliminary injunction is granted. The remainder of its request for preliminary injunction is denied.

Undisputed Facts

In her discovery deposition, Corda Lester testified that she was hired by Len Hermer and Gene Herniak to work at their Fantastic Sams salon in Warrenville, Illinois in 1988. In 1991, she finished cosmetology school and became a hair stylist at the salon. She was promoted to assistant manager shortly thereafter and promoted to manager in 1994. Lester continued to work at the salon for the next six years, left the salon for six months to try office work in 2000, then bought the salon from Hermer and Herniak for $95,000 later that year. E.B.N. Enterprises, Inc., the entity that managed Fantastic Sams franchising in northeastern Illinois, charged a $5500 franchise transfer fee, and Lester paid half of that fee while Hermer and Herniak paid the remainder. On March 10, 2000, Lester and E.B.N. signed a "Standard Franchise Agreement" with an initial term of ten years. The agreement is governed by Illinois law. Lester assigned her rights under the agreement to C.L., the corporation she owned, effective May 22, 2000. Lester agreed to remain liable for the franchisee obligations under the agreement, and E.B.N. approved the assignment.

The franchise agreement allowed C.L. to use the Fantastic Sams name and trademarks, and entitled it to use the Fantastic Sams "Confidential Operating Manual." The agreement obliged C.L. to operate the salon in accordance with Fantastic Sams' standards and directives. C.L. was also required to pay to E.B.N. a minimum "royalty" fee for each week of the term of the contract, plus a share of the cost of any regional advertising or promotions.

C.L. promised that during the term of the franchise agreement, it would not use the premises of the franchise for any purpose other than the operation of a Fantastic Sam's salon, and that for the same period, it would not own, operate, or have any other connection with any

hair care business that was not a Fantastic Sams location.  C.L. also promised that for a period of two years after the termination of the agreement, it would not have any connection with a hair care business located within five miles of any Fantastic Sams salon.  At the end of the agreement, C.L. was to stop using the Fantastic Sams trademarks, return the Confidential Operating Manual, and, on request, transfer its telephone numbers to a party of E.B.N.'s choosing.  E.B.N. was also granted the option to buy any or all of C.L.'s tangible assets at book value.

In a letter dated May 29, 2009, Lester advised Fantastic Sams that she would "no longer be able to pay your fees for the use of the Fantastic Sams name" and that, effective June 1, 2009, she would "no longer identify my salon with Fantastic Sams."  Lester continued to operate a salon, renamed Corda's Hair Design, at the same location.  E.B.N. then filed this suit.

### E.B.N.'s Requests For Injunctive Relief

E.B.N. originally sought injunctive relief in three respects.  It asked that the defendants be enjoined from using the Fantastic Sams marks in any manner, that they be prohibited from operating any hair salon within five miles of the former franchise location until March 2012, and that they be enjoined from using any Fantastic Sams trade secret.

E.B.N.'s trademark claims were based upon assertions that the defendants continued to sell Fantastic Sams products and that the Fantastic Sams logo was still clearly visible on a sign outside the salon after the repudiation of the franchise agreement.  During the course of this action, Lester represented that the product sales had ceased and that the Fantastic Sams logo had been painted over and covered by a sign identifying the premises as "Corda's Hair Design."  Although E.B.N. has reserved the right to pursue damages for the alleged misuse of its

3

trademarks, it represented in open court that it was no longer seeking injunctive remedies for these claims.

A second element of E.B.N.'s request for injunctive relief is also essentially undisputed. The franchise agreement between the parties indicated that E.B.N.'s operating manual was confidential, that Lester and C.L. were entitled to use it only during the term of the agreement, and that they were obliged to return it upon termination of the agreement. E.B.N. seeks an injunction against the defendants' use of its trade secrets, and in Lester's deposition, she indicated that while she had not opened and did not use the operating manual, she still possessed it. (Deposition of Corda Ann Lester, Docket #33, Attachment #1, p. 18.) The defendants do not suggest that they are entitled to retain the manual, and this court concludes that it must be returned to E.B.N.

The remaining and contested issue is whether the defendants shall be enjoined from continued operation of their salon in violation of the franchise agreement's non-competition provisions. The propriety of a grant of this request for injunctive relief is determined by a two stage analysis. In the first stage, E.B.N. must show that it will suffer irreparable harm without a preliminary injunction; that traditional legal remedies would be inadequate to remedy the harm; and that its claim has some likelihood of succeeding on the merits. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America,* 549 F.3d 1079, 1085-86 (7th Cir. 2008). If E.B.N. has failed to make any one of these showings, its request for injunctive relief must be denied. *Girl Scouts,* 549 F.3d at 1086. If all three showings are made, this court must then conduct the second-stage analysis: it must weigh each party's likelihood of success on the merits, the harm that would be suffered by each party in the event of an adverse ruling, and the impact of any ruling on the public interest, and must ultimately determine whether the balance of

equities favors granting or denying the requested relief. *Girl Scouts,* 549 F.3d at 1086; *Hoosier Energy Rural Electric Cooperative Inc. v. John Hancock Life Insurance Co.,* 582 F.3d 721, 725 (7th Cir. 2009). E.B.N.'s request for an injunction against continued operation of Lester's renamed salon fails to demonstrate that it will suffer irreparable harm in the absence of relief, and thus falls short of the showing required under the first-stage analysis.

District courts in this circuit are encouraged to conduct at least a cursory examination of the sufficiency of the plaintiff's showing under each of the required first stage elements. *Girl Scouts,* 549 F.3d at 1087. E.B.N. has made the necessary showing of a likelihood of success on the merits here. To make that showing, a plaintiff seeking injunctive relief must demonstrate only "a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002). E.B.N. has made the uncontradicted showing that the current operation of Lester's salon is a breach of the franchise agreement's competition restrictions, and Illinois law permits enforcement of such restrictions if they are reasonable. *Eichmann v. National Hospital and Health Care Services,* 308 Ill. App. 3d 337, 343 (1999). Though it is less than clear from the present record that the restrictions in the franchise agreement here are reasonable, this court finds that E.B.N. has made the minimal showing of likely success required to support a grant of injunctive relief.

However, E.B.N. falls short of the necessary showing that it will be irreparably harmed without an injunction against the defendants' continued salon operations. E.B.N. contends that irreparable injury is presumed from a breach of a non-competition agreement, but no such presumption is sustained by the record presented here.

The precedents cited by E.B.N. as support for its claim of irreparable injury were based at least in part on showings by the plaintiff franchisors that former franchisees' continued

operations were improper because they used proprietary or unique elements of the plaintiffs' business.  See *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 538 (6th Cir. 2007) [proprietary dry cleaning process for damaged clothing]; *Quizno's Corp. v. Kampendahl,* 2002 WL 1012997, at *6 (N.D. Ill. 2002) [unique sandwich shop menus, recipes and ovens].  E.B.N. fails to make a similar showing here.

E.B.N.'s pleadings and supporting documentation establish that through the franchise agreement, Lester and C.L. were permitted to use the "Fantastic Sams System," and E.B.N. contends that this system is confidential.  It also notes Lester's concession that she learned everything she knows about salon operations during her tenure as an employee of a Fantastic Sams franchise.  (Plaintiff's Supplemental Memorandum, Docket #33, p. 8.)  But this concession does not compel the conclusion that the knowledge currently used in the defendants' salon is confidential system information that Lester learned only by virtue of the franchise agreement.  E.B.N. offers no evidence identifying the elements of the Fantastic Sams System, and no evidence that the knowledge used by the defendants in their new salon is anything other than generally sound business practices and hair styling techniques.  Without such evidence, E.B.N. has not demonstrated that operation of the current Lester-C.L. salon necessarily misappropriates the confidential Fantastic Sams System information.

The record is equally devoid of any indication that the defendants' salon unfairly trades upon goodwill established by E.B.N. or Fantastic Sams.  E.B.N. offers no evidence that the defendants' current customers seek salon features unique to Fantastic Sams or that they are in any way induced to believe that they will receive such features from the new salon.  The only evidence suggesting the basis of the salon customer's choice is the affidavit of Lester, which asserts that such decisions are "based first and foremost on their comfort level with the

individual stylist," and that after a positive experience with a stylist, the customer will "seek that stylist out on all future occasions." (Affidavit of Corda Ann Lester, Docket #41, Attachment # 3, paragraph 25.) E.B.N. does not dispute this assertion, nor does it claim that it would have relationships with the defendants' customers in the absence of the renamed salon.

E.B.N. argues that continued operation of the renamed salon threatens its ability to attract and keep franchisees because potential franchisees will be deterred by the presence of a competing business and because they will believe that E.B.N.'s franchise agreements can be disregarded with impunity. The record established at this stage does not support either argument.

In response to interrogatory requests that it identify any entity who expressed an interest to operate a Fantastic Sams franchise at or within five miles of the defendants' location, E.B.N. conceded that no one had expressed an interest in the location or the territory, and that no one had declined to open a franchise because of the presence of defendants' salon. (Plaintiff's Answers To Defendants' Interrogatories #9-11, Docket #41, Attachment #2.) When a plaintiff franchisor does not demonstrate the capacity to do business in the territory of a former franchisee, a district court may decline to enjoin operation of a similar business in breach of a noncompetition agreement because irreparable harm has not been shown. *Baskin-Robbins Inc. v. Patel,* 264 F. Supp. 2d 607, 612 (N.D. Ill. 2003).

E.B.N.'s interrogatory answers attempt to explain this absence of interest by asserting that it was unable to market its franchises because of the presence of the defendants' salon. This explanation is contradicted by the franchise agreement between the parties. That agreement explicitly provides that the franchise territory granted by E.B.N. is "non-exclusive," that other Fantastic Sams franchises and E.B.N. itself retained the right to solicit business within the

7

franchised territory, and that E.B.N. could also grant new Fantastic Sams franchises for other locations in the territory. (Standard Franchise Agreement, Section II, paragraph E., Docket #1, Attachment #1, p. 3-4.) Since Lester and C.L. were expected to accept a franchise on the condition that they could face nearby competition from other franchisees, it does not appear that new potential franchisees have been deterred by the presence of their salon at a former franchise location. Accordingly, this court cannot conclude that the defendants' current salon must be enjoined from continued operation to protect E.B.N.'s ability to do business in the area.

Finally, E.B.N. claims that the defendants' continued business must be enjoined to protect its franchise system from the perception that it does not enforce its agreements. However, it has not only failed to present any evidence in support of this conclusion, it has successfully asserted that such evidence is irrelevant to its claims. Lester and C.L. sought to defend their actions with the contention that E.B.N. had waived the right to enforce the franchise agreements by ignoring breaches by other Fantastic Sams franchisees. They sought to discover the identities of all such franchisees in the territory since the year of the signing of the E.B.N.-Lester agreement. E.B.N. objected, asserting that information "about franchisees other than defendants has no bearing on whether Defendants breached their franchise agreement with Plaintiff and whether Plaintiff is entitled to the relief it is seeking in this lawsuit." (Plaintiff's Answers To Defendants' Interrogatories #12, Docket #41, Attachment #2.) This objection prevailed, and the defendants were not permitted to discover information about other area franchisees. E.B.N. cannot now claim that its need for an injunction rests upon other franchisees.

In summary, E.B.N. has not shown that the defendants must be enjoined from operating their new salon to prevent use of its confidential information, to prevent unfair appropriation of

other proprietary or unique aspects of the Fantastic Sams business, to prevent consumer confusion, or to preserve any relationships E.B.N. would have with customers. It has also failed to show that an injunction is necessary to allow it to market its system to new franchisees or to enforce its existing franchise relationships. In the absence of these showings, this court finds that there is no evidence that E.B.N. will suffer irreparable harm if Lester and C.L. are not enjoined from operating their salon.

## Conclusion

Defendants C.L. Creative Images, Inc. and Corda Lester are hereby enjoined from making any further use of the Fantastic Sams Confidential Operating Manual and are ordered to immediately return that manual to plaintiff E.B.N. Enterprises, Inc. The plaintiff has otherwise failed to show that it will suffer irreparable harm if an injunction is not entered, and its requests for injunctive relief are in all other respects denied.

So ordered.

March 28, 2011

Sharon Johnson Coleman
District Judge